UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| Deloris Ann Pinson, ) | Civil Action No.: 8:15-cv-03261-RBH |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| Nancy A. Berryhill, Acting Commissioner ) | |
| of the Social Security Administration, ) | |
| ) | |
| Defendant. | |

Plaintiff Deloris Ann Pinson ("Plaintiff") seeks judicial review, pursuant to 42 U.S.C. § 405(g), of a final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Plaintiff's claim for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Title XVI of the Social Security Act (the "Act"). The matter is before the Court for review of the Report and Recommendation of United States Magistrate Judge Jacquelyn D. Austin, made in accordance with 28 U.S.C. § 636(b)(1) and Local Civil Rule 73.02(B)(2) for the District of South Carolina. The Magistrate Judge recommends the Court affirm the Commissioner's decision. [ECF #21].

**Factual Findings and Procedural History**

The procedural timeline is adequately set forth by the Magistrate Judge in the Report and Recommendation. [ECF #20, pp. 1-4]. With respect to Plaintiff's treatment history, briefly stated, Plaintiff was 38 years old as of the alleged onset date of May 6, 2009. [ECF #12-2, p. 29]. Plaintiff previously worked as a cafeteria cook, machine operator, parking and CNA. [ECF #16, p. 4]. In early 2006, Plaintiff underwent surgery of her right knee. [ECF #16, p. 5]. Thereafter, Plaintiff was treated by Dr. Milner, an orthopaedic surgeon, whose treatment notes indicate he was concerned about the slow progression of Plaintiff's recovery. [ECF #12-8, Ex. 12F]. Dr. Milner's notes also questioned Plaintiff's

diligence in working on her recovery exercises. [ECF #12-8, Ex. 12F]. Plaintiff continued to lose more range of motion in her knee as 2009 progressed, and Dr. Milner's treatment notes indicate Plaintiff walked with an antalgic gait. [ECF #12-8, Ex. 12F]. Toward the end of 2009, Dr. Milner also treated Plaintiff for pain in her hip, and Dr. Milner's notes indicate that x-rays show a moderate amount of osteoarthritis. [ECF #12-8, Ex. 12F]. Plaintiff was also treated in 2009 for persistent migraine headaches. [ECF #12-7, Ex. 10F].

In early 2010, Plaintiff saw Dr. Sanchez, an orthopaedist, because she continued to have stiffness and swelling in her knee. At that time, Dr. Sanchez also diagnosed Plaintiff with anemia, sleep disorder, and headaches. [ECF #12-8, Ex. 11F]. During 2010, Plaintiff was evaluated by Dr. Milner for leg pain, numbness in her left foot, back pain, shoulder pain, and swelling hands. [ECF #16, p. 8]. An MRI revealed mild facet arthroplasty bilaterally at L4-5 and L5-S1. In 2010, a state agency medical consultant opined that Plaintiff had the residual functional capacity ("RFC") to perform light work with certain postural and environmental limitations. [ECF #12-8, Ex. 13F]. Plaintiff was also treated by her primary care provider, Dr. William F. Childers, in 2010 prior to a right total knee arthroplasty. At that time he noted her right knee was swollen with tenderness and decreased range of motion. [ECF #12-8, Ex. 17F]. His notes from later in the year of 2010 also indicate that Plaintiff complained of insomnia exacerbated by her knee pain. He ordered her to be on Elavil for insomnia and blood work for her anemia. [ECF #12-8, Ex. 20F]. Plaintiff continued treating with Dr. Sanchez, and his physician's assistant noted that in September of 2010, Plaintiff was progressing slowly in therapy after knee surgery, and that she should continue physical therapy and taking Percocet and Flexeril. [ECF #12-9, Ex. 22F].

Dr. Sanchez completed a Functional Capacity Questionnaire in August of 2010, wherein he noted that Plaintiff could not work presently, but in an 8 hour work day, she could sit for 4 hours in a

typical work day, but not walk or stand for any length of time. She could lift up to 10 pounds, but never stoop or crouch. He also indicated that Plaintiff would experience severe enough pain that it would interfere with attention and concentration to perform even simple tasks. [ECF #12-4, Ex. 9B]. Dr. Childers also completed a Functional Capacity Questionnaire in September of 2010 and indicated Plaintiff would have chronic problems with her knee. [ECF #12-4, Ex. 9B]. He further indicated that Plaintiff could sit and stand for zero to two hours during the eight hour work day, never lift and carry any amount of weight, never stoop and crouch, and that she would experience frequent pain significant enough to interfere with attention and concentration needed to perform simple work tasks. [ECF #12-4, Ex. 9B]. In November of 2010, another state agency consultant found that Plaintiff was capable of performing light work with postural limitations. [ECF #12-8, Ex. 21F]. In March of 2011, Plaintiff's physical therapist, Jessica Benson, completed a Medical Source Statement noting that Plaintiff had participated in physical therapy in 2010 and 2011 for right knee pain. [ECF #13-1, Ex. 23F]. Ms. Benson noted that Plaintiff was not a malingerer and further noted that her impairments were reasonably consistent with the symptoms and functional limitations described. She was also treated in the emergency room at this time for headaches and neck pain. [ECF #13-2, Ex. 24F]. During 2011, Plaintiff was also evaluated as mildly obese, and suffered from fatigue, achy joints, insomnia, and TMJ issues. [ECF #13-3, Ex. 27F]. Plaintiff continued to be treated in 2011 for issues related to her headaches, as well as lumbar and cervical strain. Dr. Sanchez noted in one record in August of 2011 that he did not believe Plaintiff could return to work. [ECF #13-3, Ex. 26F]. At the end of 2011, Plaintiff underwent yet another knee surgery. [ECF #13-3, Ex. 29F].

In 2012, Plaintiff underwent another right total knee arthroplasty. [ECF #13-3, Ex. 29F], as well as surgery to her left knee. [ECF #13-4, Ex. 37F]. Plaintiff continued to suffer from migraine headaches

and shoulder pain. [ECF #13-4, Ex. 31F]. In June of 2012, Dr. Sanchez provided a statement regarding Plaintiff's condition, indicating he felt certain she would be limited to no more than sedentary work with that being defined as being able to stand or walk in combination no more than 2 hours total out of an 8 hour work day and that her walking was "quite limited." [ECF #13-4, Ex. 33F]. As 2012, progressed, Dr. Sanchez noted that Plaintiff's condition was beginning to improve as far as motion in her knees were concerned; however, Dr. Sanchez later decided to schedule an additional surgery. [ECF #13-4, Ex. 36F]. Dr. Sanchez completed a questionnaire on July 28, 2012 noting that Plaintiff would have to rest away from her work station if she were attempting to work an 8 hour day, 5 days a week for more than an hour and she would have problems with attention and concentration that would interrupt tasks during the work day. Dr. Sanchez also noted that based upon Plaintiff's history, physical examinations x-rays, she has been limited to this extent since May 2009 and would persist in this manner for longer than a year. [ECF #13-4, Ex. 35F]. Dr. Sanchez performed surgery on Plaintiff's left knee on August 3, 2012. [ECF #13-4, Ex. 36F].

In 2013, Dr. Childers treated Plaintiff for left hand weakness and abnormal grip, and he referred her to Palmetto Bone and Joint. [ECF #13-7, Ex. 52F]. In April of 2013, Dr. Sanchez again treated Plaintiff for pain and soreness in her left knee. Later in that year Dr. Childers treated Plaintiff for left hand pain and numbness and left-sided neck pain. He diagnosed her with chronic pain associated with significant psychosocial dysfunction. [ECF #13-7, Ex. 52F]. In October of 2013, Dr. Childers treated Plaintiff for anxiety and left hip pain. [ECF #13-7, Ex. 55F], and in November of 2013, she came to his office for treatment related to left knee pain. [ECF #13-7, Ex. 55F].

Plaintiff initially applied for disability benefits on January 12, 2010. [ECF #16, p. 4]. Following an administrative hearing, Plaintiff's application was denied in an order dated March 3, 2012. [ECF

#16, p. 4]. Upon review of this order, the Appeals Council ordered this case be remanded with instructions to: (1) update the evidence on Plaintiff's medical condition consistent with the requirements of 20 C.F.R. §§ 404.1512-13 and 416.912-13; (2) consider indications of excessive body weight at step two of the sequential evaluation process; (3) give further consideration to Plaintiff's maximum residual functional capacity and provide appropriate rationale with specific references to evidence of record in support of the assessed limitations; and (4) obtain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on Plaintiff's occupational base, with further instructions to include in the hypothetical questions the specific capacity/limitations established by the record as a whole and to ask the vocational expert to identify examples of appropriate jobs and to state the incidence of such jobs in the national economy. [ECF #12-2, p. 17]. A second Administrative Law Judge ("ALJ") conducted a hearing on January 13, 2014. [ECF #12-2, p. 17]. On February 25, 2014. the ALJ issued an unfavorable decision to Plaintiff. The ALJ's findings were as follows:

> (1) The claimant meets the insured status requirements of the Social Security Act through June 30, 2012.
>
> (2) The claimant has not engaged in substantial gainful activity since May 6, 2009, the alleged onset date. (20 C.F.R. 404.1571 *et seq.* and 416.971 *et seq.*).
>
> (3) The claimant has the following severe impairments: degenerative joint disease involving left and right knee, status-post total right knee replacement and revision and left knee arthroscopic surgery, history of carpal tunnel with residual nerve damage with left hand weakness, bursitis in hips, osteoarthritis and obesity (20 C.F.R. 404.1520(c) and 416.920(c)).
>
> (4) The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, 404.1526,416.920(d), 416.925 and 416.926).

> (5) After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 C.F.R. 404.1567(a) and 416. 967(a) except never climb ladders/ropes/scaffolds and occasionally climb steps/ramps, balance, stoop, kneel, crouch and crawl. She requires a sit/stand option and must be allowed to change positions up to every 30-minutes whereby she could remain at the work station and stand and sit back down. She is limited to frequent fine and gross manipulations with bilateral upper extremities and she must avoid concentrated exposure to hazards and exposure to cold weather.
>
> (6) The claimant is unable to perform any past relevant work (20 C.F.R. 404.1565 and 416.965).
>
> (7) The claimant was born on May 2, 1971, and was 38 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 C.F.R. 404.1563 and 416.963).
>
> (8) The claimant has at least a high school education and is able to communicate in English (20 C.F.R. 404.1564 and 416.964).
>
> (9) Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).
>
> (10) Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).
>
> (11) The claimant has not been under a disability, as defined in the Social Security Act, from May 6, 2009, through the date of this decision (20 C.F.R. 404.1520(g) and 416.920(g)).

[ECF #12-2, pp. 20-30].

Plaintiff sought review by the Appeals Council, but the Appeals Council denied her request for review, thereby making the ALJ's decision the Commissioner's final administrative decision for purposes of judicial review. On August 17, 2015, Plaintiff filed her Complaint in this Court. [ECF #1].

6

Both Plaintiff and Defendant filed briefs [ECF #16; ECF #17; ECF #18], and the Magistrate Judge issued a Report and Recommendation on January 6, 2017, recommending that the Commissioner's decision be affirmed. [ECF #20, p. 23]. Plaintiff filed objections on January 20, 2017. [ECF #21]. Defendant replied to these objections February 1, 2017. [ECF # 23].

## Standard of Review

### I. Judicial Review of the Commissioner's Findings

The federal judiciary has a limited role in the administrative scheme established by the Act, which provides the Commissioner's findings "shall be conclusive" if they are "supported by substantial evidence." 42 U.S.C. § 405(g). "Substantial evidence has been defined innumerable times as more than a scintilla, but less than preponderance." *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

This statutorily mandated standard precludes a de novo review of the factual circumstances that substitutes the Court's findings for those of the Commissioner. *Vitek v. Finch*, 438 F.2d 1157, 1157-58 (4th Cir. 1971); *Hicks v. Gardner*, 393 F.2d 299, 302 (4th Cir. 1968). The Court must uphold the Commissioner's factual findings "if they are supported by substantial evidence and were reached through application of the correct legal standard." *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012); *see also Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972) (stating that even if the Court disagrees with the Commissioner's decision, the Court must uphold the decision if substantial evidence supports it). This standard of review does not require, however, mechanical acceptance of the Commissioner's findings. *Flack v. Cohen*, 413 F.2d 278, 279 (4th Cir. 1969). The Court "must not abdicate [its] responsibility to give careful scrutiny to the whole record to assure that there is a sound

foundation for the [Commissioner]'s findings, and that [her] conclusion is rational." *Vitek*, 438 F.2d at 1157-58.

### II. The Court's Review of the Magistrate Judge's Report and Recommendation

The Magistrate Judge makes only a recommendation to the Court. The Magistrate Judge's recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261, 270-71 (1976). The Court must conduct a de novo review of those portions of the Report and Recommendation ("R & R") to which specific objections are made, and it may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1).

The Court must engage in a de novo review of every portion of the Magistrate Judge's report to which objections have been filed. *Id.* However, the Court need not conduct a de novo review when a party makes only "general and conclusory objections that do not direct the [C]ourt to a specific error in the [M]agistrate [Judge]'s proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). In the absence of specific objections to the R & R, the Court reviews only for clear error, *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005), and the Court need not give any explanation for adopting the Magistrate Judge's recommendation. *Camby v. Davis*, 718 F.2d 198, 200 (4th Cir. 1983).

Here, after reviewing the record, including the briefs filed by the parties, the Magistrate Judge recommends affirming the decision of the Commissioner. Plaintiff raises the following objection to the recommendation of the Magistrate Judge: the opinions of two doctors (Dr. Childers and Dr. Sanchez) and a physical therapist (Ms. Jessica Benson) each contain work-preclusive limitations, which the ALJ improperly weighed or ignored. [ECF #21, p. 1]. This Court will analyze the merit of this objection

below.

## Analysis

### I. Weight of Treating Physicians

Medical opinions are evaluated and weighed based on the following factors: (1) whether the physician has examined the claimant; (2) the treatment relationship between the physician and the claimant; the supportability of the physician's opinion; (4) the consistency of the opinion with the record; and (5) whether the physician is a specialist. 20 C.F.R. § 404.1527.  Social Security Ruling 96-2p requires an ALJ give specific reasons for the weight given to a treating physician's opinion.  The ALJ must give controlling weight to a treating physician's opinion regarding the nature and severity of a claimant's impairments when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence. 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2); *see also Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001). Conversely, an ALJ may discount a treating physician's opinion if it is unsupported or inconsistent with other evidence. *Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996).

####   A. Dr. Childers

The ALJ did not provide any specific weight to the September 10, 2010 opinion of treating physician Dr. Childers, which consisted of a form report, titled the Functional Capacity Questionnaire. On this form report, he opined that Plaintiff had post-traumatic right knee osteoarthiritis, that she could sit or stand for 0-2 hours throughout the work day, that she could not lift any amount of weight, that she could never stoop or crouch, and that she frequently experienced pain. [ECF #12-4, Ex.9B].  Plaintiff initially argued that remand was appropriate because the ALJ failed to provide a weight to Dr. Childers' opinion.  The Magistrate Judge disagreed, and found that this error was harmless because, despite the

fact that it conflicted with the ALJ's determination regarding whether Plaintiff could stoop and crouch, the ALJ noted that she was not limiting the RFC with respect to stooping and crouching because the household chores Plaintiff testified that she performed required "incidental" stooping and crouching. [ECF #20, p. 23]. In her objections, Plaintiff argues that the ALJ's RFC is not consistent with Dr. Childers' opinion indicating that Plaintiff's limitations go beyond the limitations found with an RFC for "sedentary work." Accordingly, Plaintiff argues that the failure to weight Dr. Childers' opinion is error.

This Court has thoroughly reviewed the record. Initially, this Court notes that the ALJ did not specify any weight to findings in either of the Functional Capacity Questionnaires found in the record. Both Dr. Sanchez and Dr. Childers are treating physicians, although as noted by Defendant, Dr. Childers's specialty is family practice (while Dr. Sanchez is an orthopaedist). Both doctors have treatment records reflecting Plaintiff's consistent knee pain. However, both Dr. Sanchez and Dr. Childers indicated in their forms that Plaintiff could never "stoop" or "crouch," which is in direct conflict with the RFC determination of the ALJ. In fact, the ALJ also determined that Plaintiff's obesity would reasonably affect her ability to perform certain postural activities, including stooping and crouching, but ultimately determined that restricting Plaintiff from these functions contradicts the fact that she is apparently able to perform household chores which involved stooping and crouching. However, because two treating physicians determined that Plaintiff could not perform these functions and these opinions were not mentioned or otherwise appear to have been considered by the ALJ. this Court is unable to undertake a meaningful review of whether this information was in fact considered by the ALJ, and if so, whether it would have changed the ALJ's RFC determination. Accordingly, this Court remands this case to the ALJ to make an assessment regarding the opinions of Dr. Childers found

in the completed Functional Capacity Questionnaire [ECF #12-4, p. 9B] and Dr. Sanchez found in the his completed Functional Capacity Questionnaire [ECF #12-4, p. 9B].

### B. Dr. Sanchez

The ALJ considered Dr. Sanchez's opinion contained within his medical statement, dated June 13, 2012, that Plaintiff be restricted to sedentary work, and gave it great weight in restricting her RFC to sedentary work. [ECF #12-2, p. 28]. However, the ALJ gave little weight to Dr. Sanchez's finding that Plaintiff would need to "rest away from the work station with her leg elevated for greater than an hour out of the working portion of the work day due to knee swelling." For her reasons, the ALJ points to the fact that this opinion is apparently inconsistent with physical examinations, a treatment record from April 22, 2013, and a treatment record from Dr. Childers from July 9, 2013, which provides that Plaintiff did not suffer from "pitting edema" and had a normal gait. The Magistrate Judge noted that the ALJ explained why she discounted Dr. Sanchez's opinion regarding Plaintiff's need to rest, and apparently that is the reason the Magistrate Judge found the assessment of Dr. Sanchez's opinion was supported by substantial evidence.

As previously explained above and as noted by Plaintiff in her objection, a review of the record reveals that the ALJ may not have considered Dr. Sanchez's Functional Capacity Questionnaire. [ECF #12-4, Ex. 9B]. Plaintiff also argues that the ALJ erred in failing to assess other portions of Dr. Sanchez's medical statement dated June 13, 2012 wherein he indicates that Plaintiff could stand no more than two hours total out of an 8 hour work day, that she could walk no more than 5-10 minutes without pain, and that she would probably always have stiffness in her knee. [ECF #13-4, p. 81]. Within his statement, Dr. Sanchez also notes that knee swelling would be consistent with Plaintiff's condition. [ECF #13-4, p. 81]. As is the case with Dr. Childer's opinion, this Court finds that it cannot

11

undertake to perform a meaningful review, given that the opinions found in the Functional Capacity Questionnaire may not have been considered by the ALJ, and the ALJ did not otherwise comment on the entirety of the findings found in Dr. Sanchez's medical statement which would impact the RFC. This Court does not find that this is harmless error, given that fact that, it appears from the record, and as noted by the findings of the ALJ, that Plaintiff's knee conditions appear to be the most severe impairment as it relates to her ability to work. The Questionnaire filled out by Dr. Sanchez also contains information which could potentially impact the RFC. Accordingly, this Court finds that in remanding this case, the ALJ should also consider Dr. Sanchez's Functional Capacity Questionnaire and make a finding as to the weight, if any, to be afforded to the opinions contained within that form. The ALJ should also specifically consider the remainder of the work preclusive findings contained within Dr. Sanchez's medical statement and determine what weight, if any, to afford those findings.

### C. Physical Therapist Jessica Benson

The ALJ explained that she gave little weight to the assessment of Jessica Benson because she was not an acceptable medical source, and further, because she failed to answer several questions in the questionnaire she answered regarding Plaintiff. However, the ALJ did give great weight to Ms. Benson's observation that Plaintiff needs to have a "Functional Abilities Test" conducted to assess how long she can sit and stand. The ALJ also gave great weight to Ms. Benson's finding that with prolonged sitting, Plaintiff would not need to have her legs elevated. [ECF #12-2, p. 28]. The Magistrate Judge did not explicitly analyze Ms. Benson's findings because the Magistrate Judge noted that Plaintiff did not argue in her brief that the ALJ made any specific error in weighing this opinion. [ECF #20, p. 21 n.9]. Within Plaintiff's objections, while she again frames the issue as an improper weighing of the opinions of Dr. Childers, Dr. Sanchez, and Ms. Benson, she does not argue or otherwise point to an

error in the ALJ's review of Ms. Benson's opinion. Accordingly, because Plaintiff provides no specific objection, this Court needs only to review for clear error. In the absence of specific objections to the R & R, the Court reviews only for clear error. *Diamond*, 416 F.3d at 315. After reviewing the record, this Court finds no clear error in the Magistrate Judge's determination that substantial evidence supports the ALJ's findings regarding Ms. Benson's opinion.

## **Conclusion**

The Court has thoroughly reviewed the entire record as a whole, including the administrative transcript, the briefs, the Magistrate Judge's R & R, Plaintiff's objections to the R & R, Defendant's response to Plaintiff's objections, and the applicable law. For the foregoing reasons, the Court respectfully rejects the recommendation of the Magistrate Judge. [ECF #20]. The action is remanded to the Commissioner to conduct an analysis consistent with this Order. The Commissioner's decision is reversed pursuant to sentence four of 42 U.S.C. § 405(g) and the case is remanded to the Commissioner for further administrative action.

**IT IS SO ORDERED.**

Florence, South Carolina                                s/ R. Bryan Harwell
March 24, 2017                                          R. Bryan Harwell
                                                        United States District Judge